Richard W. Postma, Jr.
P.O. Box 671370
Chugiak, Alaska 99567-1370
907-529-9144
rwpostma@mtaonline.net

## IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RICHARD W. POSTMA, JR.,<br><br>          Plaintiff,<br><br>v.<br><br>STATE OF ALASKA COURT SYSTEM,<br>the ALASKA JUDICIAL COUNCIL, the<br>ALASKA COMMISSION ON JUDICIAL<br>CONDUCT, and the following state actors in<br>their individual capacities: J. PATRICK<br>HANLEY, JILL KOLBERG, SHARON<br>GLEASON, CHRISTINE JOHNSON,<br>CHARLES CHRISTENSEN, NANCY<br>MEADE, MARLA GREENSTEIN and<br>LARRY COHN,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 3:10-CV-00249-HRH<br>) |

## AMENDED COMPLAINT

In accordance with Fed. R. Civ. P. 15(a), plaintiff Richard W. Postma, Jr.,

hereby amends his complaint prior to any responsive pleading being due:

### I.    Parties

1.    At all times pertinent to the allegation in this complaint, plaintiff Richard

W. Postma, Jr., was a District Court Judge for the State of Alaska Court System in the

Third Judicial District at Anchorage, duly appointed in accordance with state law by the

Governor of Alaska on June 8, 2007.

2.      Plaintiff has served as an appointed state district court judge from August 28, 2007 to November 2, 2010, the date of his first retention election.

3.      At all times pertinent to the allegations in this complaint, between his appointment and his first retention election, plaintiff meets Title VII, the Family & Medical Leave Act, and the Americans with Disabilities Act's definition of a covered "employee," in that he did not serve on the Governor's personal staff, nor did he serve the Governor as an immediate or policy making advisor.

4.      Plaintiff Postma is Hispanic.  He also is a father of three elementary school aged children and has a spouse who works full-time.

5.      The State of Alaska Court System is plaintiff's employer.  It employs more than 15 employees each working day in each of 20 or more calendar weeks in the current year, and therefore meets Title VII and the FMLA's definition of a covered employer.

6.      The Alaska Judicial Council is a state agency with statutory authority to act on behalf of the State of Alaska and the Alaska Court System to investigate judicial performance and issue a retention report to the public prior to an election.  The *ex officio* chairperson of the Council is the Chief Justice of the Alaska Supreme Court.

7.      The Alaska Commission on Judicial Conduct is a state agency responsible for screening and investigating complaints against judicial officers, and for reporting recommendations for adverse employment actions against judicial officers to the Alaska Court System's Supreme Court.  Three judicial officers from the State of Alaska Court System serve as voting members of the Commission.

8.    J. Patrick Hanley is a District Court Judge for the State of Alaska in the Third Judicial District in Anchorage.  At all times pertinent to the allegations in this complaint, defendant Hanley was a deputy presiding district court judge.  As a deputy presiding district court, defendant Hanley holds a supervisory role over all district court judges in Anchorage, including the plaintiff.

9.    Sharon Gleason is a Superior Court Judge for the State of Alaska in the Third Judicial District in Anchorage.  In March 2009, defendant Gleason was appointed to be the presiding superior court judge for Anchorage.  As presiding superior court judge, defendant Gleason holds a supervisory role over all judicial officers in Anchorage, including the plaintiff.

10.    Christine Johnson is the Administrative Director for the Alaska Court System.  As Administrative Director, defendant Johnson holds a supervisory position with authority to regulate, discipline and suspend judicial officers in the State of Alaska.

11.    Charles Christensen, a.k.a., Chris Christensen, is the Deputy Administrative Director for the Alaska Court System.  As Deputy Administrative Director, defendant Christensen assists defendant Johnson in the discharge of her duties.

12.    Nancy Meade is the Court Rules Attorney for the Alaska Court System, and is supervised by defendants Johnson and Christensen.

13.    Jill Kolberg is the Supervisor of the Anchorage District Court Calendaring Office.  She is supervised by Area Court Administrator Wendy Lyford, who in turn reports to defendants Christensen and Johnson.

**Amended Complaint**
*Postma v. State of Alaska Court System, et al.,* Case No. 3:10-CV-00249-HRH

14.     Marla Greenstein is the Executive Director of the Alaska Commission on Judicial Conduct.  As executive director, defendant Greenstein is responsible for the intake, investigation, and recommendation to the Commission of disciplinary actions against judicial officers in the State of Alaska.

15.     Larry Cohn is the Executive Director of the Alaska Judicial Council.  As executive director, defendant Cohn is responsible for investigating and reporting on the performance of all Alaska judges, and to assist the Council in making its retention recommendations to the voters.

16.     At all times pertinent to the allegations in this complaint, the individually named defendants were state actors acting under the color of state law, and are not entitled to any absolute, qualified, discretionary, judicial, or other immunity for their unlawful actions alleged below.

## II.   Jurisdiction

17.     On September 11, 2009, plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission, alleging violations of federal and state civil rights laws by the State of Alaska Court System and the individually named defendants.  On August 26, 2010, the U.S. Department of Justice granted plaintiff a right to sue under within ninety (90) days of receipt of the letter.  This action is timely filed under these jurisdictional deadlines.

18.     This court has original jurisdiction over claims arising under Title VII, the Family & Medical Leave Act, the Americans with Disabilities Act, and 42 U.S.C. § 1981, 1983, 1985 and 1986.

19.     This court has supplemental jurisdiction over state law claims involving the same events, transactions, and nucleus of operative facts giving rise to plaintiff's federal claims.  These state claims include causes of action under the Alaska Human Rights Act, AS 18.80.220; the Alaska Whistleblower Act, AS 39.90.100; and the state law claim for breach of the implied covenant of good faith and fair dealing.

### III.     Constitutional Provisions Common to All Causes of Action

20.     Workplace discrimination or harassment based on race, ethnicity or gender violates the guarantees of equal protection in the federal and state constitutions.  *See Alaska v. EEOC*, 564 F.3d 1062, 1068-69 (9th Cir. 2009).

21.     Gender discrimination takes many forms, and includes employer endorsement of "stereotype-based beliefs about the allocation of family duties … and employers' reliance on them in establishing discriminatory leave policies." *Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721, 730-31 (2003) ("Parental leave for fathers … is rare.  Even … where child care leave policies do exist, men, both in the public and private sectors, receive notoriously discriminatory treatment in their requests for such leave … This and other differential leave policies were not attributable to any differential physical needs of men and women, but rather to the pervasive sex-role stereotype that caring for family members is women's work.").

22.     An employer is liable for discrimination or harassment which violates the equal protection clauses of the state and federal constitution if it: (1) allows discrimination or harassment through an official policy; (2) intentionally refuses to protect the employee making the complaint; (3) intentionally refuses to redress the discrimination or harassment; or (4) penalizes the employee who reports discrimination instead of punishing the discriminator or harasser. *See Alaska v. EEOC*, 564 F.3d at 1068-69.

23.     "The First Amendment prohibits state retaliation against a public employee for speech made as a citizen on a matter of public concern." *See id.* at 1070. Complaints about gender or racial discrimination in public employment are constitutionally protected speech. *Id.*, citing *Freitag v. Ayers*, 468 F.3d 528, 545 (9th Cir. 2006) and *Connick v. Myers*, 461 U.S. 138, 146-47 (1983).

24.     The due process clauses of the federal and state constitutions prohibit the state and state actors from selectively or vindictively initiating or maintaining legal actions "designed to penalize a defendant for invoking legally protected rights." *Dyer v. State*, 666 P.2d 438, 442 (Alaska App. 1983); *see Disciplinary Matter involving Treim*, 929 P.2d 634, 646 (Alaska 1996), citing *U.S. v. Meyers*, 810 F.2d 1242, 1245 (D.C. Cir. 1987).

## IV.   Federal Statutory Provisions Common to All Causes of Action

25.     Title VII does not preempt actions under 42 U.S.C. § 1983 against individual state actors for employment discrimination. *Roberts v. College of the Desert,*

870 F.2d 1411, 1415 (9th Cir. 1988). The elements of a discrimination or retaliation claim against an individual state actor under § 1983 are the same as the elements of a Title VII claim against a state employer. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 n.1 (1993).

26.     42 U.S.C. § 1985(3) applies to violations of § 1983 "if two or more persons … conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."

27.     42 U.S.C. § 1986 applies to: "Every person who, having knowledge that any wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured … for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented."

28.     The Civil Rights Act of 1991 amended 42 U.S.C. § 1981 to allow a direct cause of action against individual state actors for racial or ethnic discrimination and retaliation. *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996), accord, *Pittman v. Oregon, Employment Dept.*, 509 F.3d 1065, 1070 (9th Cir. 2007).

## V.   Factual Allegations Common to All Causes of Action

29.    Between August 28, 2007, and February 9, 2009, Judge Postma experienced and observed poor work performance, insubordination, disrespect, harassment, unprofessional behavior, and intentional manipulation of the district court master calendar, by defendant Kolberg and her subordinate employees in the district court calendaring office in ways that adversely affect the work environment of Judge Postma and other court employees.  One example is the request of the supervisor of the calendaring office, defendant Kolberg, to restrict certain in-court clerks who are Hispanic or African-American from being assigned to work with Judge Postma.  Another is defendant Kolberg's efforts to blame minority in-court clerks for her own poor work performance, which included her repeated failure to reserve a courtroom and jury room for a jury trial the week of February 2, 2009, and blaming Judge Postma's Hispanic in-court clerk  mis-communicating with her.

30.    Prior to February 9, 2009, Judge Postma repeatedly reported to defendant Hanley and to other court administrators his concerns about defendant Kolberg's work performance and treatment of himself and others.  Judge Postma also reported his suspicion that defendant Kolberg's behavior was possibly motivated by racial or ethnic animosity.  Judge Postma explained that he would avoid the District Court Calendaring office until defendant Kolberg's and her staff's inappropriate behavior was addressed and corrected.

31.     On the morning of February 9, 2009, Judge Postma notified defendant Hanley that he intended to file a written complaint against defendant Kolberg and her staff, and provided him with a rough draft of the complaint.

32.     On the evening of February 10, 2009, Judge Postma left a written complaint about defendant Kolberg and her staff on defendant Hanley's desk.

33.     On the morning of February 11, 2009, defendant Hanley received Judge Postma's written complaint.   Upon receipt, defendant Hanley immediately canceled Judge Postma's family leave for that afternoon, which he had approved the day before, without first consulting with Judge Postma.

34.     On February 12, 2009, defendant Hanley wrote to Ms. Lyford and asked that she and the Alaska Court System respond defensively to Judge Postma's complaint about defendant Kolberg by "preparing for the possibility of lawsuit."

35.     By requesting the Alaska Court System respond defensively to disprove the claim of discrimination, rather than to conduct an impartial investigation of the situation, defendant Hanley acted in a retaliatory manner designed hijack the court system's investigatory process for his own benefit and his own defense, and to penalize Judge Postma for opposing and reporting possible discrimination in the first place.

36.     On February 12, 2009, defendant Hanley approached Judge Postma in the basement of the Nesbett Courthouse near the entrance to the tunnel to the Boney Courthouse.   Judge Postma asked defendant Hanley to place into writing whatever he wanted to tell him.   Defendant Hanley reacted by cutting off Judge Postma as he tried to

leave to enter the tunnel, and then walking slowly in front of Judge Postma to block his progress. When Judge Postma attempted to pass around him, defendant Hanley twice moved to block Judge Postma in a manner that nearly caused the two to collide. Concerned that defendant Hanley was attempting to provoke a physical confrontation in an isolated hallway without witnesses, and in retaliation for his protected activities the day before, Judge Postma thereafter used public hallways, stairwells and elevators whenever possible in order to avoid defendant Hanley.

37.    On February 18, 2009, Judge Postma learned from the assistant supervisor of the In-court Clerks' Office, Cynthia Lee, that defendant Kolberg had asked that certain minority in-court clerks not be assigned to work with Judge Postma, and that only a non-minority in-court clerk would be acceptable to her.

38.    On or about March 18, 2009, defendant Kolberg retaliated against plaintiff Postma for filing a discrimination complaint against her by filing a judicial temperament complaint against him with the Alaska Commission on Judicial Conduct.

39.    On April 1, 2009, defendant Greenstein reported that she discussed defendant Kolberg's complaint against Judge Postma with Area Court Administrator Wendy Lyford. By sharing Commission information with Ms. Lyford, defendant Greenstein violated the confidentiality requirements of AS 22.30.060. This conversation also tainted the Commission's investigation with defendant Hanley's request for a defensive response to Judge Postma's complaint and protected activities. After her conversation with Ms. Lyford, defendant Greenstein issued a report to the Commission

minimizing Judge Postma's concerns about workplace discrimination and favoritism, and instead advising that: "Employment issues are very sensitive for both employer [the Alaska Court System] and employee [defendant Kolberg], but there does seem to be some basis for the complaint that warrants proceeding."

40.    On May 4, 2009, defendant Greenstein reported to the Commission that she met with Judge Postma on or about April 30, 2009.  In her report, defendant Greenstein "gave my assessment of the situation.  My observations to date were that it was likely that calendaring staff did treat the judge in a less favorable way than other judges." Defendant Greenstein also told Judge Postma that she disapproved of his reporting an opposition to disparate treatment by defendant Kolberg and her staff because, even if he was right about race and ethnic discrimination, "with court staff it was more important [for the judge] to be viewed as 'reasonable' than 'right.'"  This statement shows that, before there had been any investigation, defendant Greenstein had already determined to place the Alaska Court System's and Ms. Kolberg's supposedly "sensitive" interests in not being criticized about their poor work performance and possible discrimination above plaintiff Postma's interests under state and federal law to: (a) equal and fair treatment in the courthouse workplace and (b) not suffer retaliation for exercising those protected rights.

41.    On or about June 2, 2009, defendant Greenstein received a telephone call from defendant Christensen, "who inquired about the status of our investigation … In sharing our impressions and conclusions, [defendant Christensen] and I came to the same

conclusions," which included that while "I do not know the final disposition of the court system personnel complaint that was initiated by the judge, [I] have the impression that it will be dismissed as unfounded."   At the time of this statement, the court system investigation was not complete, witnesses had not been interviewed, and plaintiff had not been given an opportunity to show pretext in the actions and explanations of defendant Kolberg and other defendants.

42.     At the time, of his conversation on or about June 2, 2009 with defendant Greenstein, defendant Christensen had "oversight" of the court system's investigation of Judge Postma's discrimination and retaliation complaint.   After his conversation with defendant Greenstein, defendant Christensen attempted to influence the perception of others that Judge Postma's concerns about possible discrimination and retaliation were "unfounded."  He later advised attorneys with whom he was acquainted to file challenges "for cause" against Judge Postma to remove him from hearing other cases because (a) Judge Postma had reported and opposed discrimination and retaliation in the courthouse workplace, and (b) defendant Christensen had self-identified himself as an adverse witness to Judge Postma's claims.   This, and other workplace conduct by defendant Christensen, was intended to interfere with and penalize Judge Postma for exercising federal and state rights to report and oppose discrimination and retaliation in the courthouse workplace.

43.     On or about June 8, 2009, retired judge Brian Shortell issued a report to defendant Gleason.  His impressions and conclusions included:

Judge Postma is convinced that calendaring has targeted him for discriminatory treatment. He bases his opinion on a course of conduct he believes started more than a year ago ... and, in general, a hostile and uncooperative attitude with him as opposed to other district court judges.

....

At present, I believe Judge Postma has little or no direct verbal/personal contact with calendaring employees. ... [A]ny judge should have the right to complain in a respectful way about inefficiencies in the system or lack of cooperation from other employees; no employees should be subversive or disrespectful or uncooperative with judges; favoritism or disparate treatment should not be allowed.

....

*Judge Postma isn't the only judge who has been critical of the current calendaring system.* Some of the other judges I talked to have complaints also ... On some occasions, *calendaring employees have been overheard making sniping or backbiting comments about certain judges, which indicates [a] lack of respect* and might suggest to an affected judge that calendaring employees would be less likely to cooperate with someone they've felt free to criticize openly. Some judges feel that they have not received proper consideration of their needs for sick time relief or other scheduling issues.

....

[I]t might also suggest that *calendaring decisions* can on occasion *be affected by inappropriate personal considerations, lack of effort, or favoritism of some kind.* (Emphasis added).

Upon information and belief, defendants Gleason, Christensen, Meade and Greenstein acted, in concert or individually, to exclude this report from the court system's and the Commission's investigatory file in order to defend against and penalize Judge Postma for reporting and opposing workplace discrimination.

44.    On or about July 27, 2009, defendant Hanley reported to defendant Meade that:

> I asked Ms. Kolberg if [Judge Postma's] complaint against her had also been withdrawn ... She said that she had been considering filing a complaint against Judge Postma ... and *when the complaint against her had not been withdrawn, she decided to file her complaint* with Human Resources. She then told me that she had not heard back from them, so she filed a complaint with the Judicial Conduct Commission. [Emphasis added.]

Defendants Hanley, Meade, Christensen, Gleason and Johnson withheld this evidence of retaliation from plaintiff and the Commission until after defendants Gleason and Johnson suspended plaintiff from his judicial duties on or about Sept. 30, 2009.

45.    On September 24, 25 and 28, 2009, plaintiff experienced sever anxiety attacks while in his office as he prepared to defend himself before the Commission on Oct. 5, 2009, against defendant Kolberg's retaliatory judicial temperament complaint.

46.    On September 29, 2009, defendant Meade reduced to writing the court system's previously unwritten policy that:

> Ms. Kolberg filed a JCC [Judicial Conduct Commission] complaint within a month after Judge Postma filed his complaint asking the Human Resources department to investigate her.
> ....
>
> *The judicial officer who is the target of the JCC complaint cannot restrain or in any way chill that right by filing a* [discrimination and retaliation] *complaint against the complainant* [Ms. Kolberg] *first*. To consider Ms. Kolberg's exercise of her right to be unlawful retaliation would be to effectively limit and suppress her right.

The court system policy reported by defendant Meade is unlawful because it violates state and federal civil rights laws and long-standing precedent by the U.S. Supreme Court regarding retaliatory lawsuits; because it penalizes judicial officers who report discrimination in the workplace; and because it protects those employees who engage in unlawful discrimination, harassment and retaliation.

47.     Armed with defendant Meade's unlawful policy, on September 30, 2009 defendant Gleason wrote to plaintiff:

> Richard – I am writing to you on two matters.
>
> First, today I delivered ... a copy of Nancy Meade's personnel investigation report.
> ....
>
> Second ... given the anxiety attacks and high level of stress that you describe in your emails ... I have decided to relieve you of all district court judicial duties effective immediately.

Defendant Gleason's decision to suspend plaintiff from his judicial duties for reporting discrimination, and for suffering from anxiety caused by unlawful retaliation, violated Judge Postma's rights under state and federal constitutionals and civil rights laws to workplace equality and protection from retaliation.

48.     On October 28, 2009, defendant Greenstein reported to the Commission that:

> Judge Postma amended his complaint against Jill Kolberg once he found out that she had filed a complaint with our Commission. As Ms. Meade notes in her report: "Ms. Kolberg's filing of the JCC complaint [on March 5, 2009] is itself a protected activity ... The judicial officer who is the target of the complaint cannot restrain or in

any way chill that right by filing a [discrimination, retaliation and insubordination] complaint against the complainant first [on February 10, 2009.] To consider Ms. Kolberg's exercise of her right to be unlawful retaliation would effectively limit and suppress her right." *Of all the judges's actions to date ... this is the most serious. It is paramount* that judges not interfere with the right of any individual to file a complaint with this office." (Emphasis added).

Defendant Greenstein statement to the Commission constitutes an admission that enforcing the court system's unlawful policy was the "most serious" and "paramount" reason for its adverse actions against Judge Postma. Defendant Greenstein's admission shows a willful and purposeful decision by a state actor to misuse the authority of their public office, and to act under the color of their state authority, to deprive Judge Postma of his state and federal constitutional and statutory rights to report and oppose discrimination and protections against reprisal and retaliation.

49. Between October 2009 and March 2010, defendants Gleason, Johnson, Greenstein, each purporting to be acting on behalf of the Alaska Court System or the Commission on Judicial Conduct, ordered Judge Postma to submit to psychological examinations. Each examination diagnosed Judge Postma with anxiety, with the probable cause being a toxic and possibly discriminatory work environment in Anchorage.

50. On or about April 8, 2010, defendants Hanley, Gleason and Johnson asked defendant Greenstein to prosecute Judge Postma for inappropriate temperament and supposed violation of Commission confidentiality rules because he was continuing to

report and oppose discrimination and retaliation in the workplace, and because he was suffering anxiety caused by the incidents and situations he reported.

51.     On or about April 29, 2010, based on these individual defendants' recommendations that Judge Postma be prosecuted for engaging in protected activities, the Commission on Judicial Conduct formally charged Judge Postma with (a) engaging in inappropriate communication with fellow judges and court staff by reporting and opposing discrimination and retaliation; (b) reporting to others that he had filed a complaint with the Commission on Judicial Conduct and the EEOC; (c) improperly requesting accommodations and investigation of his concerns about disparate treatment and to prevent further retaliation and anxiety; and (d) for suffering illness from anxiety caused by discrimination and retaliation.   The Commission then violated its own confidentiality statute and rules; Judge Postma's right to privacy under the Alaska Constitution; and Judge Postma's rights to privacy under federal laws, to include public disclosure of individually identifiable health information in violation of the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d-6, by publishing to a newspaper a complaint and a defamatory press release accusing Judge Postma of suffering from an unidentified "mental illness" that is or may become permanent, without any mention of workplace discrimination and retaliation as the probable or likely cause of Judge Postma's anxiety.

52.     Between November 2009 and June 27, 2010, defendant Greenstein acted to circumvent confidentiality requirements of state law, which prohibited her and the

Commission on Judicial Conduct by disclosing confidential Commission records, files and reports, by providing selected excerpts of these confidential records to defendant Larry Cohn at the Alaska Judicial Council.

53. On or about June 27, 2010, the Council held an interview with Judge Postma, without providing public notice that the meeting was open to the public as requested by Judge Postma. The Council members, on advice from defendant Cohn, refused Judge Postma's requests to review the evidence they were considering using against him. On advice from defendant Cohn, the Council refused Judge Postma's request to present witnesses on behalf: his former secretary, Nanci Biggerstaff; a psychiatrist, Dr. Aron Wolf; and other rebuttal witnesses.

54. On or about July 5, 2010, the Council issued a NO recommendation to the public, listing as reasons matters that were not raised or discussed at the June 27, 2009 interview. Defendant Cohn later refused Judge Postma's subsequent requests for production of evidence and an opportunity to refute the new disclosed reasons.

55. Since July 5, 2010, defendant Cohn has published misleading, inaccurate, defamatory and partisan political advertisements against Judge Postma that: (1) paraphrases the Commission on Judicial Conduct's formal charges in a manner that violates the confidentiality requirements of AS 22.30.060; (2) omits that the Commission's expert issued an opinion that discrimination and retaliation was a possible cause of Judge Postma's anxiety; (3) omits that Judge Postma disputes the charges; (4) omits that the Commission hearing is on the charges is scheduled for after the election on

**Amended Complaint**
*Postma v. State of Alaska Court System, et al.,* Case No. 3:10-CV-00249-HRH
Page 18 of 26

December 15, 2010; and (5) violated Judge Postma's right to privacy under the Alaska Constitution and under federal laws, to include the prohibition on public disclosure of individually identifiable health information under the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d-6, by publishing to a newspaper a complaint and a defamatory press release accusing Judge Postma of suffering from an unidentified "mental illness" that is or may become permanent, and without any mention of workplace discrimination and retaliation as the probable or likely cause of Judge Postma's anxiety. These defamatory acts, omissions, misstatements, misleading information, and violation of state and federal privacy rights by defendant Cohn constitute a misuse of the authority of his office to act under the color of state law to penalize Judge Postma for exercising his protected state and federal constitutional and statutory rights to report and oppose workplace discrimination; to mislead the public about the nature of Judge Postma's protected activities; and to have the voters pre-judge Judge Postma's protected activities in the voting booth before his public hearing on December 15, 2010.

56.    Upon information and belief, these and other facts expected to be revealed during discovery will show the following violations of law and establish the following causes of action:

## VI.  Causes of Action

### Count I
### Employment Discrimination by Individual State Actors
### (42 U.S.C. § 1981)

57.   The facts alleged in this complaint, in whole or in part, show that the individually named defendants, as state actors ostensibly operating under the color of state law, have engaged in intentional discrimination against Judge Postma on account or because of his Hispanic ethnicity, in violation of 42 U.S.C. § 1981.

### Count II
### Employment Retaliation by Individual State Actors
### (42 U.S.C. § 1981)

58.   The facts alleged in this complaint, in whole or in part, show that the individually named defendants, as state actors ostensibly operating under the color of state law, have engaged in intentional retaliation against Judge Postma because of his protected activities of reporting and opposing possible racial or ethnic discrimination in the State of Alaska Court System workplace, in violation of the anti-retaliation provisions of 42 U.S.C. §1981.

### Count III
### Employment Discrimination-Employer Liability
### (Title VII, FMLA, ADA and AS 18.80.220)

59.   The facts alleged in this complaint, in whole or in part, show that the defendant State of Alaska Court System, through the actions and inactions by supervisory judicial officers and court administrators, has allowed its court employees and judicial

**Amended Complaint**
*Postma v. State of Alaska Court System, et al.,* Case No. 3:10-CV-00249-HRH

officers to subject Judge Postma to disparate treatment resulting in adverse employment actions on account of his Hispanic ethnicity, his gender status as a working father of elementary school aged children; his diagnosis of anxiety and others perception of this as a disability; and his protected requests for medical, family and personal leave, and for redress to discrimination, which is employer conduct that violates Title VII, 42 U.S.C. § 2000e-2 (unlawful employment practices); the FMLA, 29 U.S.C. § 2601 *et seq.*; the ADA, and the corresponding anti-discrimination provisions of the Alaska Human Rights Act, AS 18.80.220.

60.    Because the Alaska Court System and the individually named defendants have ignored the distinctions between the Alaska Court System and the Alaska Judicial Council and Commission on Judicial Conduct by violating confidentiality laws designed to keep these entities separate and by freely coordinating their defensive responses to Judge Postma's complaint, the Alaska Judicial Council and Commission on Judicial Conduct by their own actions have become ostensible agents of the Alaska Court System whose actions are thus attributable to the Alaska Court System for purposes of this cause of action.

### Count IV
### Employment Retaliation-Employer Liability
### (Title VII, FMLA, ADA and AS 18.80.220)

61.    The facts alleged in this complaint, in whole or in part, show that the defendant State of Alaska Court System, through the actions and inactions by supervisory judicial officers and court administrators, has condone, ratified, acquiesced and even

**Amended Complaint**
*Postma v. State of Alaska Court System, et al.,* Case No. 3:10-CV-00249-HRH
Page 21 of 26

participated in unlawful retaliation and reprisals against Judge Postma because he engaged in protected activities of reporting and opposing discrimination and retaliation in the public workplace, which constitutes employer conduct that violates Title VII, 42 U.S.C. § 2000e-3 (retaliation); the FMLA, 29 U.S.C. § 2615 (interference with FMLA rights); the ADA, Title IV, 42 U.S.C. § 12202 (no state immunity for retaliation) and 12203 (prohibition against retaliation and coercion); and the corresponding anti-retaliation provisions of the Alaska Human Rights Act, AS 18.80.220.

62.     Because the Alaska Court System has ignored the statutory and functional distinctions between it and the Alaska Judicial Council and Commission on Judicial Conduct by sharing information in violation of state confidentiality laws and by freely coordinating their defensive responses to Judge Postma's complaint, the Alaska Judicial Council and the Commission on Judicial Conduct are ostensible agents of the Alaska Court System whose actions are thus attributable to the Alaska Court System for purposes of the this cause of action.

## Count V
### Deprivation of Federal Rights by State Actors under Color of State Law
### (42 U.S.C. § 1983, § 1985, and § 1986)

63.     Each of the individually named defendants, as state actors, have purposefully misused the color of their state authority to deprive Judge Postma of the equal protection of state and federal constitutional and civil rights laws his equal employment opportunity rights and right to oppose discrimination without fear of reprisal, in violation of 42 U.S.C. § 1983.

**Amended Complaint**
*Postma v. State of Alaska Court System, et al.,* Case No. 3:10-CV-00249-HRH

64.     Each of the individually named defendants have, at various times between February 10, 2009 to the present, coordinated and conspired for the purpose of depriving, either directly or indirectly, Judge Postma of the equal protection or of equal privileges and immunities under the laws of the state and federal constitutions and civil rights laws, in violation of 42 U.S.C. §1985.

65.     Each of the individually named defendants have, at various times between February 10, 2009 and the present, having knowledge that any wrongs conspired to be done by other individually named defendants were about to be committed in violation of § 1983 and § 1985, and having power to prevent or aid in preventing the commission of the same, which such person by reasonable diligence could have prevented, instead neglected or refused to do so, in violation of 42 U.S.C. § 1986.

**Count VI**
**Breach of Implied Covenant of Good Faith & Fair Dealing**

66.     Each employment relationship in Alaska contains an implied covenant of good faith and fair dealing between the employer and employee.

67.     The State of Alaska Court System's treatment of Judge Postma, after he complained about a court employee's poor work performance and possible discriminatory motives, by condoning, acquiescing, ratifying and participation in retaliation against Judge Postma, to include its condonation, ratification, and participation in breach of state confidentiality laws, AS 22.30.060, and constitutional right of privacy, art. 1, § 22, Alaska Constitution, by its employees and its sub-agencies, the Alaska Judicial Council

and the Alaska Commission on Judicial Conduct, constitute a collective breach of the covenant of good faith and fair dealing implied in Judge Postma's employment relationship with the Alaska Court System.

68.     Because the Alaska Court System and the individually named defendants ignored and disregarded the distinctions between the Alaska Court System, and the Alaska Judicial Council and Commission on Judicial Conduct, by violating confidentiality laws designed to keep these entities separate, the Alaska Judicial Council (with the Chief Justice as its ex officio chairperson) and Commission on Judicial Conduct (with three judges as voting members) are actual and ostensible agents of the Alaska Court System whose actions are therefore attributable to the Alaska Court System for purposes of the breach of the implied covenant of good faith and fair dealing.

## Count VII
## Alaska Whistleblower Protection Act
## (AS AS 39.90.100)

69.     Under Alaska law, "A public employer may not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because … the employee, or a person acting on behalf of the employee, reports to a public body or is about to report to a public body a matter of public concern."

70.     To the extent the conduct above mention in other causes of action do not fall within the protections of other state and federal laws, the retaliatory adverse employment actions by the State of Alaska Court System, its sub-agencies the Alaska

Judicial Council (with the Chief Justice as its ex officio chairperson) and the Alaska Commission on Judicial Conduct (with three judges as voting members) violate Judge Postma's rights under the Alaska Whistleblower Protection Act to report unlawful discrimination and retaliation the public workplace without fear of reprisal.

### VII.   Prayer for Relief

Wherefore, plaintiff respectfully requests the court issue judgment awarding him:

1.     Past economic damages (also referred to as equitable relief under Title VII).

2.     Future economic damages such as front pay, lost future benefits, lost retirement, and damage to professional reputation (also referred to as equitable relief under Title VII).

3.     Past and future damages for emotional distress and other non-economic damages (also referred to as compensatory damages under Title VII).

4.     Punitive damages against the individual defendants, as allowed by 42 U.S.C. § 1981, 1981a, and 1983.

5.     Punitive damages against the defendant State of Alaska Court System and its actual and ostensible sub-agencies, defendants Alaska Commission on Judicial Conduct and Alaska Judicial Council, as allowed by the Alaska Whistleblower Protection Act.

6.     Attorney's fees and costs.

7.     All other appropriate equitable relief as determined by the court.

DATED this 12th day of November 2010, at Anchorage, Alaska.


By:  _Richard W. Postma_

Richard W. Postma, Jr.
Plaintiff, pro se
Alaska Bar No. 0001001